UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

RONALD CLEVELAND,

                    Defendant.

Case # 12-CR-6109-FPG

DECISION AND ORDER

## INTRODUCTION

On August 7, 2012, a federal grand jury returned an Indictment against Defendant Ronald Cleveland, charging him with conspiracy to possess with the intent to distribute, and to distribute, 5 kilograms or more of a mixture and substance containing cocaine, and 280 grams or more of a mixture and substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A); and possession of firearms in furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 924(c). ECF No. 1.

Defendant pled guilty to to the conspiracy charge on May 5, 2015, ECF Nos. 75, 79, and the Court sentenced Defendant to 125 months' imprisonment and 8 years' supervised release, ECF Nos. 85, 86.

On July 23, 2020, Defendant—who is currently incarcerated in Federal Correctional Institution Coleman Low—filed a motion for compassionate release. ECF No. 107.[1] The Government opposes Defendant's motion. ECF No. 110. Probation responded, ECF No. 111, and, after an extension of time, Defendant replied. ECF No. 115.

For the reasons that follow, Defendant's motion is DENIED.

---

[1] Defendant also filed a Motion for Miscellaneous Relief, ECF No. 106, which asks the Court to take judicial notice of the Bureau of Prisons's website, which contains up-to-date data regarding COVID-19 infections at BOP institutions. Defendant's motion to take judicial notice of the BOP website is GRANTED.

## DISCUSSION

Defendant asks this Court to release him under the First Step Act's compassionate release provision, 18 U.S.C. § 3582(c)(1)(A). As set forth below, the Court declines to do so.

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Lucas*, No. 15-CR-143, 2020 WL 2059735, at *1 (W.D.N.Y. Apr. 29, 2020) (internal brackets omitted). 18 U.S.C. § 3582(c)(1)(A) "provides one such statutory exception, often referred to as 'compassionate release.'" *Id.* There are several hurdles that a defendant must overcome to obtain relief under this provision. Specifically, a defendant "must show that (1) he has met the [statutory] exhaustion requirement[,] . . . (2) 'extraordinary and compelling reasons' warrant a reduction of his sentence, (3) he is not a danger to others or the community, and (4) a reduction is consistent with the factors set forth in section 3553(a)." *Lucas*, 2020 WL 2059735, at *1.

In this case, even if Defendant could establish the first[2] or third requirements, the Court concludes that "extraordinary and compelling reasons" do not justify a reduction of his term of imprisonment and a reduction would be inconsistent with the sentencing factors set forth in Section 3553(a).

### I.  Extraordinary and Compelling Reasons

Defendant's primary basis for compassionate release is his claim that he is particularly susceptible to COVID-19 and he faces a greater risk of contracting the disease while incarcerated at FCI Coleman Low than he does outside the facility. ECF Nos. 107, 115.

The Court's task is to determine what weight, if any, to give these considerations in evaluating whether they outweigh the Section 3553 factors supporting Defendant's sentence.

---

[2] It appears that Defendant has exhausted his administrative remedies. *See* ECF No. 107 at 3.

*United States v. Ebbers*, 432 F. Supp. 3d 421, 429-31 (S.D.N.Y. 2020). Such an inquiry requires the Court to evaluate two questions: (1) to what degree, if at all, do Defendant's medical conditions increase his risk of COVID-19 infection or complications; and (2) to what degree, if at all, are Defendant's chances of contracting COVID-19 increased while incarcerated compared to if he were released? Perhaps unsurprisingly given the ubiquitous uncertainty associated with COVID-19, the record does not permit the Court to definitively answer either question.

As to the first question, Defendant claims that he "has Tuberculosis, has immune system deficiencies from smoking, and is on chronic pain management." ECF No. 107 at 1. In his reply, Defendant claims that he also suffers from obesity and "elevated blood pressure."[3] ECF No. 115 at 7.

Defendant's medical records do not completely align with his allegations. While Defendant claims that he suffers from elevated blood pressure, records submitted to the Court from April 2017 indicate that his blood pressure was 122/76, a relatively normal reading. ECF No. 107-1 at 20. The medical records are also unclear with respect to Defendant's alleged latent tuberculous. Although treatment records from January 2015 indicate that Defendant "has a positive PPD skin test which may indicate he has latent TB," ECF No. 115 at 17, records from November 2016 indicate "Latent TB Treated," ECF No. 107-1 at 26. In February 2017, imaging demonstrated that "the visualized portions of the lung bases . . . appear clear" and Defendant's "[h]eart size appears normal." *Id.* at 8. An X-ray in February 2020 again showed that Defendant's "[l]ungs are clear. No pleural effusions." *Id.* at 30.

---

[3] Defendant waived his right to rely on these conditions as bases for compassionate release because he raised them for the first time in reply. *United States v. Sattar*, No. 02-CR-395 (JGK), 2020 WL 3264163, at *3 (S.D.N.Y. June 17, 2020). Nevertheless, Defendant's arguments are not availing on their merits for other reasons, as explained below.

While the CDC does not identify latent tuberculosis as a condition that may increase an individual's risk of severe illness from COVID-19, *see People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Sept. 23, 2020), some courts have acknowledged it as such. *See United States v. Parker*, No. 3:17CR18 (JBA), 2020 WL 4432928, at *1 (D. Conn. July 31, 2020) (granting motion for compassionate release due to Defendant's latent tuberculosis, obesity, and high blood pressure readings). However, other courts have denied compassionate release where, as here, there is no indication that Defendant's latent tuberculosis is either uncontrolled or unable to be addressed by the correctional institution. *Sattar*, 2020 WL 3264163, at *3 ("Although tuberculosis may be a risk factor for severe illness resulting from COVID-19, Sattar has not demonstrated that his tuberculosis, which is latent, is either not controlled currently or that it could not be addressed adequately at FCI-Schuylkill."). Moreover, the record remains unclear as to whether Defendant even has latent tuberculosis; the medical records only suggest that he "may" have it. ECF No. 115 at 17.

Although Defendant also claims he is obese—a medical condition identified by the CDC as placing Defendant at a higher risk of severe illness from COVID-19—the record does not indicate that his obesity is severe or that medical staff is unable to control this illness. To be sure, the medical records only indicate that Defendant "appears obese," ECF No. 107-1 at 21. Other records speak to the relatively mild nature of Defendant's illnesses: "Condition Not Found, Essentially Healthy." *Id.* at 23. Moreover, Defendant is 50 years old, which does not place him in the age category of individuals at an increased risk of developing serious complications from COVID-19. *See Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Sept. 23, 2020).

With respect to the second question, Defendant is currently incarcerated at FCI Coleman Low, a low-security correctional institution in Florida that houses 1,914 inmates, including 187 inmates in an adjacent camp.  *FCI Coleman Low*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/col/ (last visited Sept. 23, 2020).  There are currently 93 inmates and 22 staff with confirmed and active cases of COVID-19 at FCI Coleman Low. *Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/index.jsp (last visited Sept. 23, 2020).  Since the pandemic began, 139 inmates and 4 staff at FCI Coleman Low have recovered.  *Id.*  Sadly, one inmate and one staff member have died.  *Id.*  However, the Government maintains that the majority of the positive cases are lumped together with numbers from the nearby female inmate camp and therefore the number of positive cases at the male FCI Coleman Low camp are actually lower.  ECF No. 112 at 8.  When an individual tests positive for COVID-19, he or she is transferred to USP Coleman I to be placed in cells in an isolation unit.  *Id.*

While the situation at FCI Coleman Low is not ideal, neither is it dire, unlike that of many BOP facilities.  Indeed, the risk of contracting COVID-19 is present outside prison as well.  *See United States v. Veras*, No. 19-CR-10, 2020 WL 1675975, at *4 (M.D. Pa. Apr. 6, 2020) ("[T]he potential for exposure exists anywhere in the community, not just in jail . . . .").

While the Court is sympathetic to Defendant's position and does not intend to minimize Defendant's health challenges, the Court is not persuaded that they are sufficiently extraordinary and compelling to warrant Defendant's release over two years early. *See* ECF No. 115 at 1. Undoubtedly, the COVID-19 Pandemic is an unprecedented crisis, but Defendant has not marshalled persuasive evidence that he is either more likely to contract COVID-19 or at an increased at risk for sustaining serious complications due to COVID-19.  First, it is unclear that, given FCI Coleman Low's efforts to control the spread of the virus, Defendant is at a significantly

5

increased risk of contracting the virus.  Second, it is unclear whether and to what degree Defendant is at an increased risk for complications should he contract COVID-19.  Do Defendant's conditions make him substantially more likely to develop complications?  Is hospitalization a certainty should he contract COVID-19?  The present record does not answer those questions.  This is not to say that Defendant must establish his increased risk with mathematical precision, only that Defendant's evidence does not provide even a reasonable estimate of the risk he faces, in part because it is unclear how severe Defendant's conditions actually are.

If it were all but certain that an inmate would be hospitalized from COVID-19 absent compassionate release, that fact would certainly weigh more heavily in the calculus than if the inmate faced only a small, albeit heightened, likelihood of complications.  *Compare United States v. Park*, No. 16-CR-473, 2020 WL 1970603, at *6 (S.D.N.Y. Apr. 24, 2020) ("The Court fears that leaving [the defendant] any longer at FCI Danbury may convert a three-year prison sentence into a death sentence.  And that the Court cannot allow."), *with United States v. Gold*, No. 15-CR-330, 2020 WL 2197839, at *1 (N.D. Ill. May 6, 2020) ("[I]t remains the case that the majority of people exposed to the coronavirus suffer only mild to moderate symptoms, with many showing no symptoms of COVID-19 at all. . . .  [W]hile potential exposure to the virus that causes COVID-19 is not something to take lightly, it is not tantamount to a death sentence for any incarcerated individual aged 65 or older . . . .").

In other words, COVID-19 does not "warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease."  *Gold*, 2020 WL 2197839, at *1; *cf. United States v. Seshan*, No. 14-CR-620, 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020) (collecting cases in which courts denied compassionate release to inmates with serious medical conditions).  Here, it is unclear whether Defendant falls within a higher risk category *and* he has

failed to marshal evidence to establish what that means in terms of the actual likelihood of complications.

## II.     The § 3553(a) Sentencing Factors

Even if the Court accepts that Defendant faces some—albeit undetermined—increased risk of contracting the virus and experiencing complications, these considerations do not outweigh the Section 3553(a) sentencing factors that support maintaining his sentence. *See United States v. Weiskopf*, No. 19-CR-6093, 2020 WL 4013188, at *2-4 (W.D.N.Y. May 15, 2020) (denying compassionate release to defendant incarcerated at FCI Elkton who faced risk of complications where actual likelihood of complications was not established and the risk shown by defendant did not outweigh the Section 3553(a) factors supporting his sentence).

Under § 3553(a), a court must consider the following factors when it imposes a sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) [the kinds of sentence and sentencing range provided for in the Sentencing Guidelines]
(5) any pertinent [Sentencing Commission policy statement]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

*United States v. Sawicz*, No. 08-CR-287, 2020 WL 1815851, at *3 (E.D.N.Y. Apr. 10, 2020) (quoting 18 U.S.C. § 3553(a)). Obviously, the Court weighed these factors when it imposed the original term of imprisonment in 2014. Thus, in the context of the present motion, the task is not to "second guess or to reconsider whether the original sentence was just," but to assess whether

"the defendant's circumstances are so changed . . . that it would be inequitable to continue the confinement of the prisoner." *Ebbers*, 432 F. Supp. 3d at 430 (discussing legislative history of provision). In other words, the issue is whether the original Section 3553 factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release," and, in particular, "whether compassionate release would undermine the goals of the original sentence." *Id.* at 430-31.

Here, the Section 3553(a) factors continue to outweigh the risk—which is, as discussed, unclear—that Defendant faces from COVID-19. As the Court stated at sentencing, Defendant's offense is a serious one: Defendant was convicted of transporting cocaine into the community. The Court acknowledged that Defendant's "long criminal history" spanned "some 25 years." ECF No. 91 at 14-15. Referencing this long record, the Court asked at sentencing, "at the age of 44, you've got to be tired of being involved with drugs and guns and violence?" *Id.* at 14. Defendant acknowledged his criminal past and that such a life leads to two results: "[j]ail or dead." *Id.* The Court continued: "How violence can effect [sic] people on the streets, and certainly being involved with the distribution of cocaine and weapons, that goes hand-in-hand with violence. And you've been a part of that for way, way too long." *Id.* The Sentencing Guidelines called for a sentencing range between 120 and 125 months and the plea agreement set a range of 121 to 151 months. *Id.* at 17-18. Therefore, the Court sentenced Defendant to 125 months in BOP custody. *Id.* By his own account, Defendant has only served approximately 98 of those months. ECF No. 107 at 1.

The trafficking of dangerous drugs remains a serious crime and the Court is not inclined to reduce the sentence below the lowest end of the guidelines range it already found applicable and appropriate. Defendant has not set forth any particularly compelling information regarding his rehabilitation while he has been incarcerated. In fact, it appears Defendant has been disciplined

while incarcerated. *See* ECF No. 111 at 2. For all the reasons considered at sentencing, the Court finds that a 125-month sentence was and remains appropriate. Releasing Defendant two years early would not substantially satisfy the purposes of the original sentence, as it would fail to "reflect the seriousness of the offense, []promote respect for the law, [or] provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

The Court recognizes that the situation Defendant finds himself in is of serious concern: as an inmate, he has far less control over his environment and is far more reliant on correctional officials to ensure his safety during the pandemic. "A just punishment should not include an unacceptable risk of exposure to COVID-19 or any potentially lethal disease." *United States v. Vence-Small*, No. 18-CR-31, 2020 WL 2214226, at *4 (D. Conn. May 7, 2020). But neither should the uncertainty engendered by the present crisis be allowed to distort or subvert a just punishment. Defendant has not demonstrated that a reduction in his sentence is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release, ECF No. 107, is DENIED.

IT IS SO ORDERED.

Dated: September 23, 2020
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court