UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

RONALD CLEVELAND,

Defendant.

Case # 12-CR-6109-FPG

DECISION AND ORDER

## INTRODUCTION

On August 7, 2012, a federal grand jury returned an Indictment against Defendant Ronald Cleveland, charging him with conspiracy to possess with the intent to distribute, and to distribute, 5 kilograms or more of a mixture and substance containing cocaine, and 280 grams or more of a mixture and substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A); and possession of firearms in furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 924(c).  ECF No. 1.

Defendant pled guilty to to the conspiracy charge on May 5, 2015, ECF Nos. 75, 79, and the Court sentenced Defendant to 125 months' imprisonment and 8 years' supervised release, ECF Nos. 85, 86.

On July 23, 2020, Defendant—who is currently incarcerated in Federal Correctional Institution Coleman Low—filed a motion for compassionate release.  ECF No. 107.  After the Government and Probation responded, the Court denied Defendant's motion on September 23, 2020.  ECF No. 116.

On October 2, 2020, Defendant filed a motion for reconsideration of the Court's Decision and Order denying his motion for compassionate release.  ECF No. 117.  Defendant asked for his full medical file from the Bureau of Prisons ("BOP"), which the Court ordered the Government to

1

produce. ECF No. 118. The Government provided those records to the Court and Defendant, and Defendant responded. ECF No. 120.

Nothing in the records provided by the Government compel the Court to change its conclusions regarding Defendant's motion for compassionate release. Accordingly, Defendant's motion for reconsideration, ECF No. 117, is DENIED.

## DISCUSSION

Defendant again asks this Court to release him under the First Step Act's compassionate release provision, 18 U.S.C. § 3582(c)(1)(A). As set forth below, the Court declines to do so.

 "A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Lucas*, No. 15-CR-143, 2020 WL 2059735, at *1 (W.D.N.Y. Apr. 29, 2020) (internal brackets omitted). 18 U.S.C. § 3582(c)(1)(A) "provides one such statutory exception, often referred to as 'compassionate release.'" *Id.* There are several hurdles that a defendant must overcome to obtain relief under this provision. Specifically, a defendant "must show that (1) he has met the [statutory] exhaustion requirement[,] . . . (2) 'extraordinary and compelling reasons' warrant a reduction of his sentence, (3) he is not a danger to others or the community, and (4) a reduction is consistent with the factors set forth in section 3553(a)." *Lucas*, 2020 WL 2059735, at *1.

In this case, even if Defendant could establish the first or third requirements, the Court, ye again, concludes that "extraordinary and compelling reasons" do not justify a reduction of his term of imprisonment and a reduction would be inconsistent with the sentencing factors set forth in Section 3553(a).

**I.      Extraordinary and Compelling Reasons**

Defendant's primary basis for compassionate release is his claim that he is particularly susceptible to COVID-19 and he faces a greater risk of contracting the disease while incarcerated at FCI Coleman Low than he does outside the facility.  ECF Nos. 107, 115, 120.

The Court's task is to determine what weight, if any, to give these considerations in evaluating whether they outweigh the Section 3553 factors supporting Defendant's sentence. *United States v. Ebbers*, 432 F. Supp. 3d 421, 429-31 (S.D.N.Y. 2020).  Such an inquiry requires the Court to evaluate two questions: (1) to what degree, if at all, do Defendant's medical conditions increase his risk of COVID-19 infection or complications; and (2) to what degree, if at all, are Defendant's chances of contracting COVID-19 increased while incarcerated compared to if he were released?  Perhaps unsurprisingly given the ubiquitous uncertainty associated with COVID-19, the record does not permit the Court to definitively answer either question.

As to the first question, Defendant claims that is obese and has latent tuberculosis.  ECF No. 120 at 1-2; ECF No. 107 at 1; ECF No. 115 at 7.  Although Defendant's medical records do demonstrate that he is obese and has latent tuberculosis, Defendant acknowledges that references to these health challenges are scarce.  Indeed, Defendant notes that, in the over 400 pages of medical records, references to his obesity are only "[p]eppered" throughout the records and references to tuberculosis are "splattered" throughout the record.  ECF No. 120 at 1-2.  Such infrequent references belie Defendant's claim that these medical issues are so significant as to warrant early release.

Although treatment records from January 2015 indicate that Defendant "has a positive PPD skin test which may indicate he has latent TB," ECF No. 120 at 9, records from November 2016 indicate "Latent TB Treated," ECF No. 107-1 at 26.   In February 2017, imaging demonstrated

3

that "the visualized portions of the lung bases . . . appear clear" and Defendant's "[h]eart size appears normal." *Id.* at 8. An X-ray in February 2020 again showed that Defendant's "[l]ungs are clear. No pleural effusions." *Id.* at 30.

While the CDC does not identify latent tuberculosis as a condition that may increase an individual's risk of severe illness from COVID-19, *see People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Nov. 24, 2020), some courts have acknowledged it as such. *See United States v. Parker*, No. 3:17CR18 (JBA), 2020 WL 4432928, at *1 (D. Conn. July 31, 2020) (granting motion for compassionate release due to Defendant's latent tuberculosis, obesity, and high blood pressure readings). However, other courts have denied compassionate release where, as here, there is no indication that Defendant's latent tuberculosis is either uncontrolled or unable to be addressed by the correctional institution. *United States v. Sattar*, 467 F. Supp. 3d 152, 156 (S.D.N.Y. 2020) ("Although tuberculosis may be a risk factor for severe illness resulting from COVID-19, Sattar has not demonstrated that his tuberculosis, which is latent, is either not controlled currently or that it could not be addressed adequately at FCI-Schuylkill."). Moreover, the record remains unclear as to whether Defendant even has latent tuberculosis; the medical records only suggest that he "may" have it. ECF No. 120 at 9.

Again, Defendant claims he is obese—a medical condition identified by the CDC as placing Defendant at a higher risk of severe illness from COVID-19—but the record does not indicate that his obesity is severe or that medical staff is unable to control this illness. To be sure, the medical records indicate that Defendant "appears obese," ECF No. 107-1 at 21. Defendant points to one document that indicates that his body mass index is 34.0, which the CDC classifies as obesity, but not severe obesity, placing him at a lesser risk of complications than if he were

severely obese. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Nov. 24, 2020). Other records speak to the relatively mild nature of Defendant's illnesses: "Condition Not Found, Essentially Healthy." ECF No. 107-1 at 23. Moreover, Defendant is 50 years old, which does not place him in the age category of individuals at an increased risk of developing serious complications from COVID-19. *See Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Nov. 24, 2020).

With respect to the second question, Defendant is currently incarcerated at FCI Coleman Low, a low-security correctional institution in Florida that houses 1,875 inmates, including 164 inmates in an adjacent camp. *FCI Coleman Low*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/col/ (last visited Nov. 24, 2020). Defendant does not indicate that the conditions at FCI Coleman have deteriorated since his last application. Indeed, the data indicate that the condition at FCI Coleman Low has significantly improved; in September there were 93 inmates and 22 staff with confirmed and active cases of COVID-19 but now there are only 2 inmates and 21 staff with confirmed and active cases. *Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/index.jsp (last visited Nov. 24, 2020).

While the situation at FCI Coleman Low is not ideal, neither is it dire, unlike that of many BOP facilities. Indeed, the risk of contracting COVID-19 is present outside prison as well. *See United States v. Veras*, No. 19-CR-10, 2020 WL 1675975, at *4 (M.D. Pa. Apr. 6, 2020) ("[T]he potential for exposure exists anywhere in the community, not just in jail . . . .").

While the Court is sympathetic to Defendant's position and does not intend to minimize Defendant's health challenges, the Court is not persuaded that they are sufficiently extraordinary and compelling to warrant Defendant's release two years early. *See* ECF No. 115 at 1.

Undoubtedly, the COVID-19 Pandemic is an unprecedented crisis, but Defendant has not marshalled persuasive evidence that he is either more likely to contract COVID-19 or at an increased at risk for sustaining serious complications due to COVID-19.

COVID-19 does not "warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease." *Gold*, 2020 WL 2197839, at *1; *cf. United States v. Seshan*, No. 14-CR-620, 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020) (collecting cases in which courts denied compassionate release to inmates with serious medical conditions). Here, it is unclear whether Defendant falls within a higher risk category *and* he has failed to marshal evidence to establish what that means in terms of the actual likelihood of complications.

## II.     The § 3553(a) Sentencing Factors

Even if the Court accepts that Defendant faces some—albeit undetermined—increased risk of contracting the virus and experiencing complications, these considerations do not outweigh the Section 3553(a) sentencing factors that support maintaining his sentence. *See United States v. Weiskopf*, No. 19-CR-6093, 2020 WL 4013188, at *2-4 (W.D.N.Y. May 15, 2020) (denying compassionate release to defendant incarcerated at FCI Elkton who faced risk of complications where actual likelihood of complications was not established and the risk shown by defendant did not outweigh the Section 3553(a) factors supporting his sentence).

Under § 3553(a), a court must consider the following factors when it imposes a sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;

(4) [the kinds of sentence and sentencing range provided for in the Sentencing Guidelines]
(5) any pertinent [Sentencing Commission policy statement]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

*United States v. Sawicz*, No. 08-CR-287, 2020 WL 1815851, at *3 (E.D.N.Y. Apr. 10, 2020) (quoting 18 U.S.C. § 3553(a)).

Defendant does not argue that these factors weigh in his favor. Nor can the Court deduce that any of these factors have changed since it issued its last decision and order. Accordingly, for the same reasons discussed in the Court's previous decision and order, ECF No. 116, these factors continue to weigh against early release.

The Court recognizes that the situation Defendant finds himself in is of serious concern: as an inmate, he has far less control over his environment and is far more reliant on correctional officials to ensure his safety during the pandemic. "A just punishment should not include an unacceptable risk of exposure to COVID-19 or any potentially lethal disease." *United States v. Vence-Small*, No. 18-CR-31, 2020 WL 2214226, at *4 (D. Conn. May 7, 2020). But neither should the uncertainty engendered by the present crisis be allowed to distort or subvert a just punishment. Defendant has not demonstrated that a reduction in his sentence is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant's motion for reconsideration, ECF No. 117, is DENIED.

IT IS SO ORDERED.

Dated: November 24, 2020
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court